**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:13-cv-03275

Big Cats of Serenity Springs, Inc. d/b/a Serenity Springs Wildlife Center, Nick Sculac, Julie Walker,
and Jules Investment, Inc.,

        Plaintiffs,

v.

Thomas J. Vilsack (in his official capacity as
Secretary of Agriculture), Cindy Rhodes,
Tracy Thompson, and other unnamed USDA employees,

        Defendants.

---

**COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND OTHER RELIEF**

---

By and through their attorneys, Plaintiffs state as follows:

**INTRODUCTION AND NATURE OF THE ACTION**

1. Big Cats of Serenity Springs, Inc. ("Big Cats") is a nonprofit organization dedicated to providing a safe, stable, and permanent home for exotic felines and other exotic animals. Big Cats currently provides housing, food, and veterinary care to more than 140 exotic animals at its facility in Calhan, CO.

2. On May 7, 2013, Defendants Cindy Rhodes, Tracy Thompson, and at least one other individual employed by the USDA, together with local police officers, unlawfully trespassed on Plaintiffs' property and conducted an unconstitutional search in violation of Plaintiffs' Fourth Amendment rights.

3. Plaintiffs seek damages for this trespass and unconstitutional search and a declaratory judgment as set forth herein.

## PARTIES

4. Plaintiff Big Cats of Serenity Springs, Inc. is a nonprofit organization dedicated to providing a safe, stable, and permanent home for exotic felines and other exotic animals. Big Cats operates under the trade name "Serenity Springs Wildlife Center" and owns and operates a wildlife center in Calhan, Colorado. Many of the animals Big Cats cares for have been rescued from (1) other facilities across the nation, (2) individuals who purchased exotic animals as "pets" and are unable to care for them as they grow, and (3) individuals who use the animals in films and television shows (after the animals have been deemed too old or camera shy). Many of the cats arrive at the facility in advanced age and poor physical condition. Big Cats has been nursing these exotic animals and providing housing, food, and veterinary care to them for more than 20 years.

5. Plaintiff Nick Sculac is the founder and Director of Facilities for Big Cats and is a resident of Colorado Springs, Colorado.

6. Plaintiff Julie Walker is the Director of Operations for Big Cats and is a resident of Colorado Springs, Colorado.

7. Plaintiff Jules Investment, Inc. ("Jules Investment") owns the real property upon which Big Cats operates its wildlife center. Jules Investment leases the property to Big Cats.

8. Defendant Thomas J. Vilsack is the Secretary of the United States Department of Agriculture ("USDA"). Defendant Vilsack is being sued in his official capacity as Secretary.

2

9. Defendant Cindy Rhodes is a USDA inspector. She is being sued in her individual capacity.

10. Defendant Tracy Thompson is a USDA inspector. She is being sued in her individual capacity.

11. A third USDA inspector (allegedly the supervisor of Inspector Rhodes and Inspector Thompson) also trespassed on Plaintiffs' property and participated in the unconstitutional search. Despite repeated requests, the USDA has not identified this individual. As such, she remains presently unnamed. This unnamed individual is sued in her individual capacity.

## JURISDICTION AND VENUE

12. This Court has original subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 2201 & 1346 and 42 U.S.C. § 1983.

13. Venue is proper in this Court under 28 U.S.C. § 1391. A substantial part of the events and omissions giving rise to the claims asserted herein occurred in this district.

## ILLEGAL TRESPASS AND UNCONSTITUTIONAL SEARCH

### A. The USDA Is Not Permitted to Inspect a Facility When a Responsible Adult from the Facility Is Unavailable

14. As required by the Animal Welfare Act ("AWA"), Big Cats is licensed by the USDA.

15. Pursuant to the AWA, inspectors routinely conduct unannounced inspections of licensed facilities (including Big Cats) to ensure compliance with the AWA.

16. The USDA regulations require that, during business hours, a licensed facility allow USDA inspectors to enter the facility to conduct inspections. *See* 9 C.F.R. § 2.126. The

regulations also require that "a responsible adult" be "available to accompany APHIS officials during the inspection process." *Id.*

17. If an owner refuses to allow an inspection or a responsible adult from the facility is unavailable to accompany the inspectors, the owner is cited for violating 9 C.F.R. § 2.126.

18. A citation under 9 C.F.R. § 2.126 is made public, and the Secretary can impose a $10,000 civil penalty for each violation.

19. 9 C.F.R. § 2.126 does not authorize USDA inspectors to enter or inspect a facility when a responsible adult is not available to accompany the inspector (or when a facility owner refuses to allow an inspection).

20. The USDA's Animal Inspection Care Guide does not permit USDA inspectors to enter or inspect a facility when a responsible adult is not present. *See* Ex. 1, Animal Care Inspection Guide at 4.1.1 & 9.1.1. The Guide states, "IMPORTANT: Do not enter facilities with locked gates and/or No Trespassing signs unless prior approval has been obtained from the facility. If you do not find anyone at the facility, follow the procedure to complete an attempted inspection." *Id.* at 9.1.1. (emphasis in original). The procedure for an "attempted inspection" includes calling the phone number(s) provided by the licensee and then waiting 30 minutes. "[I]f nobody shows up [the inspector] should cite [9 c.f.r. §] 2.126 . . . ." *Id.* at 9.1.5

21. Nowhere in the AWA, the regulation governing inspections, or the Animal Care Inspection Guide are inspectors given authority to cuts locks or enter private facilities without the authorization of the licensee.

4

### B.     Events Leading to the May 7, 2013 Trespass and Illegal Search

22.     Mr. Sculac and the USDA inspectors have had confrontations over the years, particularly over the USDA inspectors' inaccurate reports, "nit picking" during inspections, inconsistent application of the USDA regulations, and purporting to mandate unnecessary – and expensive – changes to the facility. Inspectors Rhodes and Thompson have become overzealous with their inspections and reports, at times citing Mr. Sculac for extremely questionable or nonexistent violations.

23.     There are several examples of the inspectors' bias and inappropriate and questionable citations. The attached letter outlines several of them, including the ones most germane to the Complaint, namely the veterinarian care provided to Maverick and Baxter, two tiger cubs. *See* Ex. 2, May 30, 2013 letter to Dr. Robert Gibbens. As described in the letter, the inspectors cited Mr. Sculac for violating the AWA when there was no evidence of a violation, and the inspectors routinely omitted key information from their reports in order to create false impressions. Those reports are disseminated to the public, and those inaccurate and incomplete reports have caused harm to Big Cats.

24.     As described in the letter, several of the citations occurred because Inspectors Rhodes and Thompson asserted they disagreed with the veterinarian care provided to Maverick and Baxter. These citations were part of a pattern of harassing behavior the inspectors exhibited toward Mr. Sculac and Dr. Marsden, Big Cats' primary veterinarian.

### C.     May 6, 2013 Inspection

25.     On May 6, 2013, Inspectors Rhodes and Thompson arrived to conduct a follow-up inspection of Maverick, an injured tiger cub. At that point, Maverick had been examined by

5

two veterinarians, Dr. Colella and Dr. Marsden; had x-rays taken of his injured forelimb; was on an antibiotic, two pain killers, calcium supplements, and anti-inflammatory medicine; and Dr. Colella was scheduled to come out again that week to re-examine him. Maverick's littermate, Baxter, had also recently been found with an injured leg. He had been prescribed (and was taking) Meloxicam (an anti-inflammatory) and calcium supplements. He was also scheduled to be examined by Dr. Colella that week.

26. Despite this medical treatment given to Maverick and Baxter, Inspectors Rhodes and Thompson cited Mr. Sculac on May 6 for failing to take "appropriate methods to relieve [Maverick's and Baxter's] pain and distress . . ." Ex. 3, May 6, 2013 Inspection Report. This citation was specious. Nowhere in the report (which is made public on the USDA's website) does it mention the medicine that both cubs were on or assert how that medicine was inappropriate. Nowhere in the report does it suggest what additional medication would be appropriate to relieve the animals' "pain and distress." In fact, in response to this citation, Dr. Marsden called Inspector Thompson (a licensed veterinarian) and inquired what else Inspector Thompson was asserting should be done to relieve Maverick's pain given that he was already on two pain killers and an anti-inflammatory drug. Inspector Thompson refused to answer the question.

27. In her May 6, 2013 report, Inspector Thompson also required that the cubs be evaluated no later than 8:00 the following morning (May 7, 2013). Mr. Sculac informed Inspector Thompson that Dr. Colella was scheduled for a follow-up appointment on May 8, 2013 and asked Inspector Thompson if Maverick and Baxter could be seen then, as scheduled (one day after the deadline Inspector Thompson imposed). Inspector Thompson refused.

6

28. Mr. Sculac immediately contacted Dr. Colella and Dr. Marsden to see if they could come out to the facility and evaluate Maverick and Baxter the following morning. By that time, it was already late in the afternoon, and neither doctor could make arrangements to come to the facility on such short notice.

29. Mr. Sculac pleaded with Dr. Marsden to rearrange her schedule and allow him to bring the cubs to her clinic early the next morning. If the cubs were not evaluated by 8:00 a.m., the inspectors would undoubtedly cite Mr. Sculac again, and he would be subject to a fine of up to $10,000 per citation.

30. Dr. Marsden was willing to rearrange her schedule to accommodate the cubs if Mr. Sculac could bring them in, but she did not want the cubs to be transported. Dr. Marsden had already confirmed that Maverick had fractured his forelimb and suspected that Maverick and Baxter may be suffering from additional fractures. Both Dr. Marsden and Dr. Colella did not want the animals transported fearing that the capturing, loading, and jostling that invariably occurs in transporting tigers may exacerbate the existing fractures or cause new ones. Dr. Marsden called Inspector Thompson and explained this to her and recommended that they wait until Dr. Colella could come out on May 8th to evaluate and x-ray the cubs at the facility. Both veterinarians (Dr. Marsden and Dr. Colella) believed the one-day delay was preferable to transporting the animals.

31. Inspector Thompson refused the requested extension and demanded that the cubs be evaluated the next morning.

32. Accordingly, Mr. Sculac arrived at Big Cats at approximately 6:00 a.m. on May 7th and captured and loaded the cubs. As inappropriately ordered by Inspector Thompson, he

7

transported them to Dr. Marsden's clinic arriving at approximately 7:00 a.m. and assisted Dr. Marsden with her examination of Maverick.  At approximately 10:00 a.m., he went to his truck to bring in Baxter and heard his cell phone ringing (which had been left in the truck).  The call was from Devon Devries, an employee at Big Cats.  Ms. Devries indicated that USDA inspectors and armed police officers were inside the facility demanding to know where Maverick and Baxter were.

### D. May 7, 2013 Trespass and Illegal Search

33. Inspectors Rhodes, Thompson, and at least one other USDA employee had arrived at the Big Cats facility at approximately 8:00 a.m. on May 7, 2013, the time by which Inspector Thompson had demanded that Maverick and Baxter be evaluated by a veterinarian.

34. As is typical, the outer gate to the Big Cats facility was locked.  Near the gate are two signs, one that states "NO TRESPASSING" and one that states "TRESPASSERS WILL BE PROSECUTED."

35. An employee was at the facility, Devon Devries, but Ms. Devries did not see or hear the inspectors.

36. At approximately 8:45 a.m., Inspector Thompson phoned the El Paso Sheriff's Office and requested "urgent" assistance at the Big Cat facility.  Ex. 4, Police Report at 5.

37. Deputies Porter and French arrived at the facility in response to Inspector Thompson's call.  Inspector Thompson and Inspector Rhodes falsely told the deputies:

    a. that they (the inspectors) had obtained "court orders" to seize two animal cubs at the facility that were suffering from metabolic bone disease;

    b. that Mr. Sculac was "refusing to allow them access to the facility;"

8

   c. that "their court order allowed them the seizure [sic] of the animals and entry into the property to do so;"

   d. that they were unsure to what lengths someone at the facility would go to keep the animals; and

   e. that they (the inspectors) were concerned that someone could get hurt if one of the cats were let loose.

  38. Mr. Sculac, through his attorneys, has more than once requested copies of these alleged "court orders." The USDA has refused to even affirm that they exist. Upon information and belief, there are no such court orders; instead, the inspectors lied to the police officers to induce them to cut the chains and enter the facility.

  39. Relying upon the USDA's representations, the deputies cut the chains on the external gate, and the inspectors and deputies entered the locked, private facility. *See* Ex. 5, Map of Facility. They then parked their vehicles (within the facility's perimeter) and proceeded to a second, locked gate (securing the interior fence). *See id.* Next to the gate is a prominent sign that states, "DO NOT ENTER WITHOUT AN EMPLOYEE."

  40. At the direction of the USDA inspectors, the deputies cut the chains on this second gate, and the inspectors and deputies then entered the main "compound" area. The inspectors and deputies walked through a significant portion of the facility before arriving where Maverick and Baxter were housed. *See id.*

  41. The USDA officials eventually saw Ms. Devries and approached her demanding (in a very accusatory tone) to know where Maverick and Baxter were. Ms. Devries was shocked and alarmed to suddenly see three USDA agents and two heavily armed police officers appear

9
LEGAL28630027.1

inside the locked, private facility. She responded that the cubs were with Mr. Sculac at the veterinarian clinic.

42. The USDA inspectors expressed frustration that they had not been able to reach Mr. Sculac that morning and Ms. Devries offered to try and contact him. She stepped away and phoned Mr. Sculac, and Mr. Sculac confirmed that he was, in fact, at Dr. Marsden's clinic.

43. Not long thereafter, the USDA agents and then the police officers left, the latter apologizing for what had happened.

44. The USDA agents then went to Dr. Marsden's clinic. They did not seize Maverick or Baxter at that time (or any time hence).

45. At no time did any of the Plaintiffs give any of the Defendants permission to enter the property on May 7, 2013.

## FIRST CLAIM FOR RELIEF
### *BIVENS* ACTION AGAINST THE USDA INSPECTORS

46. Plaintiffs repeat and reallege paragraphs 1 through 45 of their Complaint as if fully set forth herein.

47. In *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), the United States Supreme Court held that federal defendants can be individually liable if they violate a plaintiff's constitutional rights.

48. Inspector Rhodes, Inspector Thompson, and the unnamed USDA employee violated Plaintiffs' right, secured under the Fourth Amendment, to be free from unreasonable searches and seizures by disregarding and violating the AWA, USDA regulations, and the Animal Care Inspection Guide, by inducing the deputies to cut two sets of chains at the facility,

10

by entering the locked, private facility, and by searching for Maverick and Baxter once they illegally entered the facility.

49. Plaintiffs seek compensatory and punitive damages for these violations.

## SECOND CLAIM FOR RELIEF
## SECTION 1983 ACTION AGAINST THE USDA INSPECTORS

50. Plaintiffs repeat and reallege paragraphs 1 through 49 of their Complaint as if fully set forth herein.

51. Under 42 U.S.C. § 1983, every person who, under color of state law, deprives another individual of their Constitutional or other legal rights, is liable to the injured person.

52. Inspectors Rhodes, Thompson, and the unidentified USDA employee are liable under Section 1983 because they acted under color of state law when the induced the deputies to cut the chains and enter the premises by making false statements including (1) they had court orders that allowed them to seize the animals and to enter the premise, and (2) they feared that the animals may be let loose and cause harm to others.

53. Plaintiffs are also liable under Section 1983 for illegally entering the premises and conducting an unconstitutional search .

54. Plaintiffs seek compensatory and punitive damages for these violations.

## THIRD CLAIM FOR RELIEF
## TRESPASS ACTION AGAINST THE USDA INSPECTORS

55. Plaintiffs repeat and reallege paragraphs 1 through 54 of their Complaint as if fully set forth herein.

11

56. Inspectors Rhodes, Thompson, and the unidentified USDA employee violated Colorado's law against trespass by (1) entering Plaintiffs' private property, and (2) causing the deputies to enter Plaintiffs' private property.

57. Plaintiffs seek compensatory and punitive damages for these violations.

## FOURTH CLAIM FOR RELIEF
## DECLARATORY JUDGMENT REGARDING VETERINARY CARE

58. Plaintiffs repeat and reallege paragraphs 1 through 57 of their Complaint as if fully set forth herein.

59. The AWA regulations require that licensed facilities "establish and maintain programs of adequate veterinary care." 9 C.F.R. § 2.40(b).

60. The USDA is required to defer to the judgment of a facility's veterinarian unless it is clear that the methods used by the veterinarian are inadequate "to prevent, control, diagnose, and treat diseases and injuries." 9 C.F.R. 2.40(b)(2).

61. In this case, both Dr. Colella and Dr. Marsden believed, using their medical judgment, that the best course of action was for Dr. Colella to evaluate and x-ray the cubs onsite on May 8, 2013 and not have them transported to Dr. Marsden's clinic on May 7, 2013.

62. Inspector Thompson inappropriately overrode this medical judgment and required that the cubs be seen early in the morning of May 7th, even after she had been told that (1) this would require the cubs to be transported, and (2) that this requirement was contrary to the medical judgment of both veterinarians.

63. Plaintiffs seek a judgment declaring that Inspector Thompson inappropriately overrode the medical advice of Big Cats' veterinarians and declaring that, in the future, the

12

USDA cannot force Mr. Sculac to choose between following the medical advice of his veterinarians and the mandates of a USDA inspector.

## FIFTH CLAIM FOR RELIEF
## DECLARATORY JUDGMENT REGARDING BUSINESS HOURS

64. Plaintiffs repeat and reallege paragraphs 1 through 64 of their Complaint as if fully set forth herein.

65. The AWA regulations require that licensed facilities be open for inspection "during business hours." 9 C.F.R. § 2.126(a).

66. Business hours are defined as "a reasonable number of hours between 7 a.m. and 7 p.m., Monday through Friday, except for legal Federal holidays, each week of the year." 9 C.F.R. § 1.1.

67. Big Cats is not typically open for business during the week. Tours of the facility are generally limited to the weekends.

68. Mr. Sculac does not live at the facility. He lives approximately 27 miles away. Sometimes he is not at the facility and is unable to make it out to the facility when the inspectors arrive, unannounced to inspect.

69. Accordingly, Mr. Sculac asked the inspectors to only inspect in the mornings (from 8 a.m. to 1 p.m.) during the week. The inspectors agreed to this request and, for a time, honored it. Recently, however, as they have sought greater occasion to harass Mr. Sculac, they have been showing up for inspections outside of this designated time.

70. On May 6, 2013, Mr. Sculac reminded Inspector Rhodes about the agreement to inspect between 8 and 1 and requested that the inspectors follow it. Inspector Rhodes told Mr. Sculac that "we can come anytime we want to."

13

71. Mr. Sculac emailed Inspector Rhodes on May 10, 2013 stating that the "business hours" that Big Cats would be available for inspection during the week are from 9 a.m. to 1 p.m. Ex. 6, May 10, 2013 email to C. Rhodes and reply from T. Tims.

72. 9 a.m. to 1 p.m. is a "a reasonable number of hours between 7 a.m. and 7 p.m., Monday through Friday" and thus complies with the applicable regulations. 9 C.F.R. § 1.1.

73. Inspector Rhodes did not respond to Mr. Sculac's email. Instead, Tracy Tims, a USDA employee responded and stated that the USDA "has the authority to inspect at any time we believe necessary to determine the welfare status of the animals at a regulated facility." Ex. 6.

74. This statement is incorrect.

75. Plaintiffs seek a declaratory judgment that the USDA must follow its own regulations and that it cannot conduct a warrantless search of the Big Cats facility outside of "normal business hours" solely because an inspector "want[s] to" or because an inspector subjectively "believe[s] [it] necessary to determine the welfare status of the animals . . . ."

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray for the following relief against Defendants:

76. Compensatory and punitive damages against Inspectors Rhodes and Thompson and the unidentified USDA employee, under *Bivens* for violating Plaintiffs' Fourth Amendment rights.

77. Compensatory and punitive damages against Inspectors Rhodes and Thompson and the unidentified USDA employee under 42 U.S.C. § 1983.

14

78.     Compensatory and punitive damages against Inspectors Rhodes and Thompson and the unidentified USDA employee for trespass.

79.     A declaratory judgment stating that:

    a.  Inspector Thompson inappropriately overrode the legitimate medical advice of Big Cats' veterinarians by requiring Maverick and Baxter to be evaluated by 8:00 on May 7, 2013 when she knew that (1) Dr. Colella was already scheduled to visit the facility and evaluate the cubs on May 8, 2013, and (2) neither veterinarian was available to visit the facility the following morning (May 7th) thus requiring Mr. Sculac to transport the cubs (against the advice of his veterinarians) in order to meet Inspector Thompson's arbitrary deadline.

    b.  Prospectively, the USDA inspectors cannot force Mr. Sculac to choose between following a mandate by a USDA inspector and the legitimate medical advice of his veterinarians.

    c.  Mr. Sculac's designation of 9 a.m. to 1 p.m. is a "a reasonable number of hours between 7 a.m. and 7 p.m., Monday through Friday" during which the USDA inspectors can inspect the Big Cats facility.

    d.  The USDA is not entitled to conduct a warrantless search of the Big Cats facility outside of normal business hours just because an inspector "want[s] to" conduct an inspection or because an inspector subjectively "believe[s] [it is] necessary to determine the welfare status of the animals" at the facility.

15

80. An award of the costs and expenses, including reasonable attorneys' fees, incurred by Plaintiffs in connection with this action.

81. An award of prejudgment interest; and

82. Such other and further relief as the Court deems just and proper.

Jury trial demanded.

Dated this 4th day of December 2013

Respectfully submitted,

  /s/ Leonard H. MacPhee
Leonard H. MacPhee
Duston K. Barton
Attorney for Plaintiffs
Perkins Coie LLP
1900 Sixteenth Street, Suite 1400
Denver, CO  80202
Telephone:  (303) 291-2300
Facsimile:  (303) 291-2400
Email:  lmacphee@perkinscoie.com
       dbarton@perkinscoie.com