IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-03275-REB-KLM

BIG CATS OF SERENITY SPRINGS, INC., doing business as Serenity Springs Wildlife
Center,
NICK SCULAC,
JULIE WALKER, and
JULES INVESTMENT, INC.,

       Plaintiffs,

v.

THOMAS J. VILSACK, in his official capacity as Secretary of Agriculture,
CINDY RHODES,
TRACY THOMPSON, and
OTHER UNNAMED USDA EMPLOYEES,

       Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

       This matter is before the Court on **Defendants' Motion to Dismiss** [#23][1] (the
"Motion").  Plaintiffs filed a Response to the Motion [#28] and Defendants filed a Reply
[#29] in further support of the Motion.   Pursuant to 28 U.S.C. § 636(b)(1) and
D.C.COLO.LCivR 72.1(c), the Motion has been referred to the undersigned for a
recommendation regarding disposition [#24].  On October 8, 2014, the Court heard oral
argument regarding the Motion. *See generally Transcript* [#39].  The Court has reviewed
the Motion, the Response, the Reply, the entire case file, and the applicable law, and is

_____

     [1]  "[#23]" is an example of the convention I use to identify the docket number assigned to
a specific paper by the Court's case management and electronic case filing system (CM/ECF).  I
use this convention throughout this Recommendation.

sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#23] be **GRANTED in part** and **DENIED in part**.

## I. Background

### A.    Allegations

On December 4, 2013, Plaintiffs initiated this lawsuit by filing their Complaint [#1]. On February 19, 2014, they filed their First Amended Complaint [#15], in which they assert four claims against Defendants relating to a May 7, 2013 United States Department of Agriculture ("USDA") inspection of Plaintiff Big Cats of Serenity Springs, Inc. ("Big Cats"). *Am. Compl.* [#15] ¶¶ 2, 22-45.  First, Plaintiffs bring a Bivens[2] action against Defendants Rhodes, Thompson, and an unknown USDA inspector (the "Inspector Defendants") for allegedly violating Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures.  *Id.* ¶¶ 46-49.  Second, Plaintiffs bring a claim under 42 U.S.C. § 1983 against the Inspector Defendants "because they acted under color of state law when they induced the deputies to cut the chains and enter the premises . . . ."  *Id.* ¶¶ 50-54. Third, Plaintiffs seek a declaratory judgment "declaring that [Defendant] Thompson inappropriately overrode the medical advice of [Plaintiff] Big Cats' veterinarians and declaring that, in the future, the USDA cannot force [Plaintiff] Sculac to choose between following the medical advice of his veterinarians and the mandates of a USDA inspector." *Id.* ¶¶ 55-60.  Finally, Plaintiffs "seek a declaratory judgment that the USDA must follow its

_____

[2] In *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the United States Supreme Court created a cause of action for money damages and injunctive relief against federal officials acting under color of their authority for violations of an individual's constitutional rights, 403 U.S. at 395-97.  *Bivens* only authorizes suit against federal officials in their individual capacities. *Smith v. United States*, 561 F.3d 1090, 1093 (10th Cir. 2009).

own regulations and that it cannot conduct a warrantless search of the Big Cats facility outside of 'normal business hours' solely because an inspector 'want[s] to' or because an inspector subjectively 'believe[s] [it] necessary to determine the welfare status of the animals . . . .'" *Id.* ¶¶ 61-72.  In addition to declaratory relief, Plaintiffs seek compensatory and punitive damages, costs, expenses, and prejudgment interest.  *Id.* ¶¶ 73-77.

In support of their claims, Plaintiffs allege that on May 6, 2013, Defendants Rhodes and Thompson visited Big Cats "to conduct a follow-up inspection of Maverick, an injured tiger cub."  *Id.* ¶ 25.   Plaintiffs maintain that Maverick received treatment from two veterinarians but that, "[d]espite this medical treatment . . . [Defendants] Rhodes and Thompson cited [Plaintiff] Sculac on May 6 for failing to [take appropriate methods to relieve Mavericks's and Baxter's[3]] pain and distress . . .'[.]" *Id.* ¶¶ 25-26.  Plaintiffs aver that the inspection report relating to the May 6, 2013 inspection "required that the cubs be evaluated no later than 8:00 the following morning (May 7, 2013)." *Id.* ¶ 27.  According to Plaintiffs, Plaintiff Sculac asked Defendant Thompson if Maverick and Baxter could be seen by one of their veterinarians on May 8, 2013, when they were already scheduled for a follow-up appointment.  *Id.*  Plaintiffs allege that Defendant Thompson refused this request. *Id.* ¶¶ 27, 31.

Plaintiffs further allege that both of Maverick and Baxter's treating veterinarians did not want them transported, but because of the May 6, 2013 inspection report's requirement that the cubs be evaluated by 8:00 a.m. on May 7, 2013, Plaintiff Sculac made

---

[3]  According to Plaintiffs, "Maverick's littermate, Baxter, had also recently been found with an injured leg.  He had been prescribed (and was taking) Meloxicam (an anti-inflammatory) and calcium supplements."  *Id.* ¶ 25.

arrangements for Dr. Marsden to evaluate the cubs early in the morning of May 7, 2013. *Id.* ¶ 30.   Plaintiffs aver that on May 7, 2013, Plaintiff Sculac arrived at Big Cats at approximately 6:00 a.m. to capture and load the cubs so he could take them to be evaluated by Dr. Marsden.   *Id.* ¶ 32.   Plaintiffs maintain that Plaintiff Sculac arrived at Dr. Marsden's clinic at approximately 7:00 a.m. and assisted her with her evaluation of the tiger cubs.   *Id.*   According to Plaintiffs, Plaintiff Sculac went to his truck at approximately 10:00 a.m. and heard his cell phone ringing.   *Id.*   "The call was from Devon Devries, an employee at Big Cats [who] indicated that USDA inspectors and armed police officers were inside the facility demanding to know where Maverick and Baxter were."   *Id.*

Plaintiffs allege that the Inspector Defendants arrived at Big Cats on May 7, 2013 at approximately 8:00 a.m. *Id.* ¶ 33.   They maintain that the outer gate was locked and that near the gate were two signs indicating "NO TRESPASSING" AND "TRESPASSERS WILL BE PROSECUTED."   *Id.* ¶ 34.   Plaintiffs aver that Ms. Devries was at the facility but did not see or hear the Inspector Defendants arrive.   *Id.* ¶ 35.

Plaintiffs further allege that at approximately 8:45 a.m., Defendant Thompson called the El Paso County Sheriff's Office "and requested 'urgent' assistance" at the facility.   *Id.* ¶ 36.   Plaintiffs aver that when the two deputies arrived at Big Cats, Defendants Thompson and Rhodes "falsely told the deputies: (a)[ ] that they (the inspectors) had obtained 'court orders' to seize two animal cubs at the facility . . . ; (b)[ ] that [Plaintiff] Sculac was 'refusing to allow them access to the facility;' (c)[ ] that their court order allowed them" to enter the property and seize the animals; (d) "that they were unsure to what lengths someone at the facility would go to keep the animals; and (e)[ ] that they (the inspectors) were concerned that someone could get hurt if one of the cats were let loose."   *Id.* ¶ 37.   Plaintiffs maintain

4

that "there are no such court orders" and that "the inspectors lied to the police officers to induce them to cut the chains and enter the facility." *Id.* ¶ 38.  As a result, Plaintiff's aver that "the deputies cut the chains on the external gate, and the inspectors and deputies entered the locked, private facility." *Id.* ¶ 39.  Plaintiffs allege that the Inspector Defendants and the deputies parked their cars inside the facility and the "deputies cut the chains on [the] second gate" that had a "prominent sign" stating "DO NOT ENTER WITHOUT AN EMPLOYEE." *Id.* ¶¶ 39-40.

According to Plaintiffs, the Inspector Defendants and deputies "walked through a significant portion of the facility before arriving where Maverick and Baxter were housed." *Id.* ¶ 40.  Plaintiffs allege that the Inspector Defendants "eventually saw Ms. Devries and approached her demanding . . . to know where Maverick and Baxter were." *Id.* ¶ 41.  Plaintiffs aver that Ms. Devries "was shocked and alarmed to suddenly see three USDA agents and two heavily armed police officers appear inside the locked, private facility" and told them that the tiger cubs "were with Mr. Sculac at the veterinarian clinic." *Id.*  Plaintiffs allege the Ms. Devries called Plaintiff Sculac who confirmed that he was at Dr. Marden's clinic and that not long after the telephone call, "the USDA agents and then the police officers left . . . ." *Id.* ¶¶ 42-43.  Plaintiffs maintain that "[a]t no time did any of the Plaintiffs give any of the Defendants permission to enter the property on May 7, 2013." *Id.* ¶ 45.

**B.    The Motion**

Defendants filed the Motion in response to the First Amended Complaint.  In it, they seek dismissal of all four claims asserted by Plaintiffs.  Regarding Plaintiffs' first claim, Defendants argue that "Plaintiffs lack[ ] a *Bivens* remedy" for their Fourth Amendment claim. *Motion* [#23] at 7.  Defendants further argue that the Court would have to create a

5

*Bivens* remedy in this instance and that the Court should not do so because the "AWA[4] and its implementing regulations provide an alternative, existing process to protect the right of an exhibitor like Big Cats or Sculac — a process that includes notice, the opportunity to be heard before the USDA, and the right to pursue judicial review of an adverse decision." *Id.* at 8-9.   In the alternative, Defendants argue that even if a *Bivens* remedy exists for Plaintiff's Fourth Amendment claim, the Inspector Defendants are entitled to qualified immunity. *Motion* [#23] at 11-21.   Regarding Plaintiff's second claim, brought pursuant to 42 U.S.C. § 1983, Defendants argue that the Inspector Defendants were not acting under color of state law, but rather federal law, and that this claim therefore fails as a matter of law. *Id.* at 24-25.  Finally, with regard to Plaintiffs' declaratory judgment claims, Defendants argue that those claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiffs failed to exhaust their administrative remedies.  *Id.* at 21-24.   In the alternative, Defendants argue that Plaintiffs "lack standing to pursue these claims because they haven't suffered an injury in fact that is concrete, imminent, or redressable." *Id.* at 23 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

In their Response, Plaintiffs argue that a *Bivens* remedy exists for their Fourth Amendment claim. *Response* [#28] at 6-8.  Plaintiffs further maintain that, "while this Court is not faced with the question of whether it should create a 'new' *Bivens* remedy," the AWA regulations do not provide a mechanism through which they can bring their Fourth Amendment claim.  *Id.* at 8.  Plaintiffs further argue that the Inspector Defendants are not entitled to qualified immunity.  *Id.* at 8-19.  Regarding Plaintiffs' § 1983 claim, they argue

---

[4]  The "AWA" is the Animal Welfare Act, 7 U.S.C. §§ 2331-59, the statute under which Plaintiff Big Cats is licensed. *Am. Compl.* [#15] ¶ 14.

6

that the Inspector Defendants acted under color of state law because they conscripted local law enforcement to cut the locks at the facility in order to gain entrance to Big Cats. *Id.* at 24-26. Finally, regarding the claims seeking declaratory judgment, Plaintiffs argue that the Court has jurisdiction because they seek to challenge the application of the regulations as written and do not seek amendment of the regulations themselves. *Id.* at 19-21. Plaintiffs further argue that they have standing to assert their third and fourth claims because the relief sought would affect the behavior of the parties going forward. *Id.* at 21-24.

In their Reply, Defendants maintain their position that the Court would have to create a new *Bivens* remedy and argue that the AWA provides "a mechanism for [P]laintiffs to seek judicial review of the May 7, 2013, inspection report" and that "the APA[5] . . . permits judicial review of a final agency action that is 'contrary to constitutional right, power, privilege, or immunity.'" *Reply* [#29] at 2. Defendants also revisit their argument that they are entitled to qualified immunity. *Id.* at 2-9. Regarding Plaintiffs' declaratory judgment claims, Defendants argue that

> [P]laintiffs confirm that they lack standing to pursue claims three and four. It is now clear that they seek, solely based on the events of May 7, equitable relief "in the future". [citation omitted]. Yet, the amended complaint has no allegations of an immediate threat that inspectors Rhodes or Thompson will continue, after May 7, to allegedly violate AWA regulations or the Constitution.

*Id.* at 10. Finally, regarding the § 1983 claim, Defendants maintain that this statute does not apply to federal officials. *Id.* at 10. Defendants further argue that the claim should be stricken as redundant. *Id.*

---

[5] "APA" means the Administrative Procedure Act. Defendants specifically rely on 5 U.S.C. § 702, which states: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

7

## II.  Standard of Review

### A.      Federal Rule of Civil Procedure 12(b)(1)

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it.  Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); Fed. R. Civ. P. 12(b)(1). Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed. *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).   "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: facial attack or factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. *Id.*  By contrast, when reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003.  With a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends. *Id.*  The Court therefore must make its own findings of fact. *Id.*  In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).  The Court's reliance on "evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule 1 2(b)(1) into a motion for summary judgment pursuant to Rule 56. *Id.*

8

**B.      Federal Rule of Civil Procedure 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted").   "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).   To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"   *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.   Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in

9

the complaint "must be enough to raise a right to relief above the speculative level." *Christy*

*Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).   "[W]here the

well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct," a factual allegation has been stated, "but it has not show[n][]that the pleader

is entitled to relief," as required by Fed. R. Civ. P. 8(a).   *Iqbal*, 552 U.S. at 679 (second

brackets added; citation and internal quotation marks omitted).

### III.  Analysis

**A.    Fourth Amendment Claim**

**1.     Existence of a *Bivens* Remedy**

As an initial matter, the Court must determine whether Plaintiffs may bring their

Fourth Amendment claim as a *Bivens* action against Defendants in their individual

capacities.   As noted above, in *Bivens*, 403 U.S. 388, the United States Supreme Court

created a cause of action for money damages and injunctive relief against federal officials

acting under color of their authority for violations of an individual's constitutional rights, 403

U.S. at 395-97.   In *Bivens*, the plaintiff argued that a warrantless search of his home and

his arrest by the Federal Bureau of Narcotics was a violation of his Fourth Amendment

rights.   *Id.* at 389-90.   The Supreme Court held that he was "entitled to recover money

damages for any injuries he [ ] suffered as a result of the agents' violation of the [Fourth]

Amendment."   *Id.* at 397.

Defendants maintain that Plaintiffs do not have a *Bivens* remedy because "the

Supreme Court has recognized this damages remedy in only two types of cases: for

violations of the Cruel and Unusual Punishment Clause, [citation omitted]; and violations

of the equal protection component of the Fifth Amendment's Due Process Clause, [citation omitted]." *Motion* [#23] at 7.   However, Defendants ignore that fact that *Bivens* itself recognized a remedy for alleged Fourth Amendment violations.   As this Court recently explained, *Bivens* remedies have been recognized in "three circumstances" by the Supreme Court: "alleged Fourth Amendment violations by federal officers, alleged violations of the equal protection component of the Due Process Clause of the Fifth Amendment; and alleged Eighth Amendment violations." *A Just Cause v. United States*, --- F.Supp.2d ---, 2014 WL 1876144, at *8 (D. Colo. May 9, 2014); *see generally Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011) (engaging in qualified immunity analysis of Fourth Amendment *Bivens* claim).   Accordingly, it is unclear to the Court why Defendants maintain that the Court must fashion a *new Bivens* remedy to allow Plaintiffs' Fourth Amendment claim that the Inspector Defendants illegally searched Big Cats to proceed.

Defendants further argue that *Schweiker v. Chilicky*, 487 U.S. 412 (1988) holds "that a statute can preclude a *Bivens* remedy even if it does not provide compensation for constitutional violations." *Motion* [#23] at 7.   In that case, the Supreme Court "responded cautiously to suggestions that *Bivens* remedies be extended into new contexts." *Chilicky*, 487 U.S. at 421.   In particular, the Court emphasized that Congress is in a better position than the courts to weigh the competing policy imperatives involved in the creation of remedies for aggrieved employees.   *See Bush v. Lucas*, 462 U.S. 367, 389 (1983). Because of its better vantage point, Congress may preclude a *Bivens*-type constitutional action by express declaration or by creating an exclusive statutory remedy.   *See Chilicky*, 487 U.S. at 421; *Lucas*, 462 U.S. at 377-78.   Additionally, "special factors" may foreclose the bringing of a *Bivens* action even "in the absence of affirmative action by Congress."

*Chilicky*, 487 U.S. at 421 (internal quotation marks omitted); *Lucas*, 462 U.S. at 377;

*Bivens*, 403 U.S. at 396-97.  As the Court explained in *Chilicky*:

> [T]he concept of "special factors counselling hesitation in the absence of affirmative action by Congress" has proved to include an appropriate judicial deference to indications that congressional inaction has not been inadvertent. When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies.

487 U.S. at 423.  Defendants, therefore, argue that the Court should not create a new

*Bivens* remedy in this case. However, again, in *Bivens* itself the Supreme Court recognized

that the plaintiff could bring a claim against the federal officers for an alleged violation of

his Fourth Amendment right to be free of unreasonable searches and seizures.  Therefore,

the Court need not determine in this case whether "Congress has provided what it

considers adequate remedial mechanisms for constitutional violations that may occur in the

course of its administration," *Chilicky*, 487 U.S. at 423, because the Court is not being

asked to create a new *Bivens* remedy.

Accordingly, to the extent the Motion argues that Plaintiffs' Fourth Amendment

*Bivens* claim should be dismissed, the Court respectfully **recommends** that the Motion be

**denied**.

### 2. Qualified Immunity

Defendants seek qualified immunity on Plaintiffs' Fourth Amendment claim against

the Inspector Defendants for monetary relief.  *Motion* [#23] at 11-21.  Government officials

are entitled to qualified immunity from liability for civil damages when their conduct does

not violate clearly established statutory or constitutional rights of which a reasonable person

in their position would have known.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity offers protection both from trial and the other burdens of litigation.  *See*

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  When defendants raise qualified immunity

in a Rule 12(b)(6) motion to dismiss, the Court employs a two-step process.  One part of

the inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently

allege a constitutional violation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "If no

[c]onstitutional right would have been violated were the allegations established, there is no

necessity for further inquiries concerning qualified immunity."  *Id.*  However, "if a violation

could be made out on a favorable view of the parties' submissions, the [other part of the

inquiry] is to ask whether the right was clearly established."  *Id.*  The Supreme Court has

held that courts are no longer required to address the inquiries in a particular order when

evaluating a qualified immunity claim.  *Sarno v. Reilly*, No. 12-cv-00280-REB-KLM, 2013

WL 1151818, at *6 (D. Colo. Jan. 17, 2013) (citing *Pearson v. Callahan*, 555 U.S. 223

(2009)).

Courts must determine whether the allegedly-violated constitutional right was clearly

established in "the context of the particular case before the court, not as a general, abstract

matter."  *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005).  That is, "[t]he relevant,

dispositive inquiry in determining whether a right is clearly established is whether it would

be clear to a reasonable officer [in each defendant's position] that his conduct was unlawful

in the situation he confronted."  *Saucier*, 533 U.S. at 202; *see also Brosseau v. Haugen*,

543 U.S. 194, 198 (2004).  Furthermore, in order for a constitutional right to be clearly

established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear

weight of authority from other circuits must have established the constitutional right.

13

*Medina v. City & Cnty. of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).  In other words, there must be case authority in which a constitutional violation was found based upon similar conduct.  *See Callahan v. Millard Cnty.*, 494 F.2d 891, 903 (10th Cir. 2007).

### a.    Clearly Established Right

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  The Fourth Amendment's prohibition against unreasonable searches and seizures applies to administrative inspections of private commercial property.  *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 311 (1978).  An owner or operator of a business thus has a reasonable expectation of privacy in commercial property.  This expectation, however, is different from, and indeed somewhat lesser than, the privacy expectation in one's home.  *See Donovan v. Dewey*, 452 U.S. 594, 598-99 (1981).  While a search of a private residence generally must be conducted pursuant to a warrant in order to be reasonable, *Payton v. New York*, 445 U.S. 573 (1980), a warrantless administrative search of commercial property does not per se violate the Fourth Amendment.  In *Marshall v. Barlow's, Inc.*, 436 U.S. at 313, the Supreme Court stated that in "closely regulated" industries—namely, those which have long been subject to close supervision and inspection—the privacy interests of business owners may be so attenuated, and the government's interest in regulating the particular industry so strong, that a warrantless inspection of the commercial premises might be reasonable within the meaning of the Fourth Amendment.

Defendants argue that at the time of the May 7, 2013 inspection, the law was not

clearly established "such that every reasonable APHIS[6] inspector would have understood that her warrantless inspection of Big Cats' facility was unreasonable under the Fourth Amendment." *Motion* [#23] at 13 (citation omitted).  Defendants further argue that because Big Cats operates in a "closely regulated" industry, it has a "'reduced expectation of privacy . . . .'" *Id.* at 14 (quoting *New York v. Burger*, 482 U.S. 691, 707 (1987)).  Applying the three-part *Burger* test, Defendants maintain that Plaintiffs cannot show that the Inspector Defendants violated a clearly established right.  *Id.* at 15.  Further, Defendants argue:

> At the time of the warrantless inspection at Big Cats' facility in 2013, "not a single judicial opinion had held that" conducting such a search of an AWA-regulated wild animal exhibitor is unreasonable under the Fourth Amendment.  *al-Kidd*, 131 S. Ct. at 2083.  Neither the Supreme Court nor the Tenth Circuit has addressed the particular constitutional question raised here, such that "existing precedent [has] placed the statutory or constitutional question beyond debate."  *Id.*

*Motion* [#23] at 15 (modifications in original).

Plaintiffs argue that Defendants "miss[ ] the point" because they "have not alleged that warrantless searches of the Big Cats facility are *per se* unreasonable."  *Response* [#28] at 9.  Instead, Plaintiffs state that "the question is whether the May 7, 2013 warrantless search was" unconstitutional.  *Id.*  Relying on *Colonnade Catering Corp. v. United States*, 397 U.S. 72 (1970), Plaintiffs argue that "cutting the chains securing the Big Cats' facility and entering the premises without consent violates Plaintiffs' Fourth Amendment rights" because "the AWA . . . does not authorize forcible entry, but instead provides for a penalty when a licensee refuses to permit a warrantless inspection."  *Response* [#28] at 11.  Plaintiffs maintain that "[w]hen the inspectors follow" the safeguards

---

[6] Defendants state that Defendants Rhodes and Thompson work for the Animal, Plant and Health Inspection Service ("APHIS") of the USDA.  *Motion* [#23] at 1.

  
built into the AWA, "a warrantless search may be reasonable . . . . [b]ut when inspectors ignore these safeguards and exercise their discretion in violation thereof, they are no longer entitled to claim that a warrantless search is reasonable." *Id.* at 12 (citations omitted).  In support of their position that the May 7, 2013 inspection was not constitutional, Plaintiffs aver that "an inspector is not permitted to enter a licensed facility with locked gates or no trespassing signs unless 'prior approval has been obtained from the facility.'" *Id.* at 13 (quoting *Compl., Ex. 1* [#1-1] (the "Guide") §§ 9.1.1, 4.1.1).  In addition, Plaintiffs argue that "a 'responsible adult' must be at the facility to accompany an inspector." *Id.* at 14 (quoting 9 C.F.R. § 2.126(b) and Guide [#1-1] § 9.1.1).  Plaintiffs further maintain that "*Colonnade* clearly and unmistakenly put federal agents on notice that they cannot forcibly enter a locked facility in order to conduct a warrantless, administrative search absent Congressional authority permitting the forcible entry." *Id.* at 16.  Plaintiffs also argue that regulations limiting the inspectors' discretion put them on notice that their conduct was unlawful. *Id.* at 17.

In their Reply, Defendants argue that "*Colonnade* no longer provides the applicable legal framework" and that *Burger* "provides the applicable test to determine whether a warrantless inspection of a closely regulated industry is constitutional." *Reply* [#29] at 3. Defendants maintain that "the Court may *not* rely on a federal regulation (9 C.F.R. § 2.126) or on the Guide to conclude that the Fourth Amendment right at issue is clearly established." *Id.* at 4 (emphasis in original).  Defendants further argue that even if the Court considered the regulation and the Guide, they do not limit the APHIS' powers of inspection or set policy. *Id.* at 5.

As an initial matter, the Court agrees with Plaintiffs that they are not challenging the

16

statutory scheme governing the USDA's warrantless searches, but rather are challenging

the application of that statutory scheme by the Inspector Defendants on May 7, 2013 at Big

Cats.  *See, e.g., LeSueur-Richmond Slate Corp. v. Fehrer*, 666 F.3d 261, 268-69 (4th Cir.

2012) (holding "that under the Fourth Amendment a party may challenge both the

constitutionality of the Act permitting warrantless searches as well as the conduct of the

government officials in a particular case").  In *LeSueur*, the Fourth Circuit closely analyzed

*Burger* and discussed the distinction between a challenge to a statute and a challenge to

the conduct of an agent under the statute.  *Id.*  The court concluded:

> In *Burger*, the Supreme Court was presented with the question of what the
> Fourth Amendment requires of statutes that permit warrantless administrative
> searches, and it answered by laying out a three-prong test. *See supra* note
> 1. To hold that there are additional requirements would be to ignore *Burger's*
> plain holding. . . .  The three-pronged *Burger* test permits warrantless
> searches so long as the relevant statute satisfies some rather basic
> standards.  But as *Turner [v. Dammon*, 848 F.2d 440 (4th Cir. 1988)]
> demonstrates—a case where the police conducted over one hundred
> warrantless searches without any justification or explanation, and did not
> issue a single citation, *Turner*, 848 F.2d at 445—statutes that satisfy *Burger*
> can still be twisted into a tool of government harassment.

*Id.* at 268.  The Court finds this reasoning persuasive.  In further support of this reading of

*Burger*, the Court notes that in that case the Supreme Court explained that "[i]t [wa]s

undisputed that the inspection was made solely pursuant to the administrative scheme."

*Burger*, 482 U.S. at 716 n.27.  Therefore, the *Burger* test is designed to test the

constitutionality of a statutory scheme that allows warrantless searches; it does not serve

as the test to apply when determining whether the officers' conduct during a particular

warrantless search that is governed by a constitutional statutory scheme was itself

constitutional.  If the constitutionality of the conduct of the officers executing a warrantless

search under a constitutional statutory scheme was only required to meet the *Burger* test,

officers could behave with impunity because they could rely on the circular argument that the search was conducted pursuant to a constitutional statutory scheme and, therefore, their conduct while executing that search was constitutional regardless of how they behaved. As a result, citizens would have no basis for challenging the conduct of the officers during the search, rather than the constitutionality of the statutory scheme itself.

That is exactly the issue raised by Plaintiffs in this case. They do not challenge the constitutionality of the USDA conducting warrantless searches of Big Cats pursuant to the AWA. As they note, "Defendants Thompson and Rhodes have, for many years, completed dozens of warrantless searches of the Big Cats facility without incident." *Response* [#28] at 9. What is at issue here is the conduct of the Inspector Defendants on May 7, 2013 when they executed that particular warrantless search. *Id.*

Therefore, rather than applying the three *Burger* factors to the May 7, 2013 inspection, the Court must consider "whether it would be clear to a reasonable officer [in each defendant's position] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. As noted above, the Court must look to Supreme Court and Tenth Circuit authority, or the clear weight of authority from other circuits, when determining if the constitutional right was clearly established on May 7, 2013. *Medina*, 960 F.2d at 1498.

Plaintiffs rely on *Colonnade* for the proposition that "federal agents cannot *forcibly* enter a licensee's premises without a warrant." *Response* [#28] at 10 (emphasis in original). In *Colonnade*, the holder of a federal liquor dealer's license brought suit after a member of the Alcohol and Tobacco Tax Division of the Internal Revenue Service broke the lock on a store room at the liquor store without a warrant and removed bottles of liquor

18

"which [he] apparently suspected of being refilled contrary to the command of 26 U.S.C. § 5301(c)." *Colonnade*, 397 U.S. at 72-74. The applicable statute allowed the owner or agent of a licensee to refuse to admit a Treasury Department employee, but, in such an instance, the licensee had to pay a fee. *Id.* at 74. The Court further explained that "[W]here Congress has authorized inspection but made no rules governing the procedure that inspectors must follow, the Fourth Amendment and its various restrictive rules apply." *Id.* at 77. The Court further noted that "this Nation's traditions [ ] are strongly opposed to using force without definite authority to break down doors." *Id.* The Court concluded that "[u]nder the existing statutes, Congress selected a standard that does not include forcible entries without a warrant. It resolved the issue, not by authorizing forcible, warrantless entries, but by making it an offense for a licensee to refuse admission to the inspector." *Id.*

Plaintiffs point to a variety of statutes to argue that, like the statute in *Colonnade*, the AWA "provides a penalty when a licensee refuses to permit a warrantless inspection." *Response* [#28] at 11. First, they cite to 7 U.S.C. § 2146(b), a provision of the AWA, which states:

> (b) Penalties for interfering with official duties
>
> Any person who forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person while engaged in or on account of the performance of his official duties under this chapter shall be fined not more than $5,000, or imprisoned not more than three years, or both. Whoever, in the commission of such acts, uses a deadly or dangerous weapon shall be fined not more than $10,000, or imprisoned not more than ten years, or both. Whoever kills any person while engaged in or on account of the performance of his official duties under this chapter shall be punished as provided under sections 1111 and 1114 of Title 18.

7 U.S.C. § 2146(b). Notably this subsection immediately follows subsection a, which governs "[i]nvestigations and inspections" of licensees.

19

Second, Plaintiffs cite to 9 C.F.R. § 2.126(a), a regulation promulgated by the
Secretary of Agriculture regarding the confiscation and destruction of animals pursuant to
the AWA, which states:

> (a) Each dealer, exhibitor, intermediate handler, or carrier, shall, during
> business hours, allow APHIS officials:
>
> > (1) To enter its place of business;
> > (2) To examine records required to be kept by the Act and the
> > regulations in this part;
> > (3) To make copies of the records;
> > (4) To inspect and photograph the facilities, property and animals, as
> > the APHIS officials consider necessary to enforce the provisions of the
> > Act, the regulations and the standards in this subchapter; and
> > (5) To document, by the taking of photographs and other means,
> > conditions and areas of noncompliance.

9 C.F.R. § 2.126(a).

Third, Plaintiffs rely on 7 U.S.C. § 2149(b), a provision of the AWA, which states:

> (b) Civil penalties for violation of any section, etc.; separate offenses; notice
> and hearing; appeal; considerations in assessing penalty; compromise of
> penalty; civil action by Attorney General for failure to pay penalty; district court
> jurisdiction; failure to obey cease and desist order

> Any dealer, exhibitor, research facility, intermediate handler, carrier, or
> operator of an auction sale subject to section 2142 of this title, that violates
> any provision of this chapter, or any rule, regulation, or standard promulgated
> by the Secretary thereunder, may be assessed a civil penalty by the Secretary
> of not more than $10,000 for each such violation, and the Secretary may also
> make an order that such person shall cease and desist from continuing such
> violation. Each violation and each day during which a violation continues shall
> be a separate offense. No penalty shall be assessed or cease and desist
> order issued unless such person is given notice and opportunity for a hearing
> with respect to the alleged violation, and the order of the Secretary assessing
> a penalty and making a cease and desist order shall be final and conclusive
> unless the affected person files an appeal from the Secretary's order with the
> appropriate United States Court of Appeals. The Secretary shall give due
> consideration to the appropriateness of the penalty with respect to the size of
> the business of the person involved, the gravity of the violation, the person's
> good faith, and the history of previous violations. Any such civil penalty may
> be compromised by the Secretary. Upon any failure to pay the penalty

20

assessed by a final order under this section, the Secretary shall request the Attorney General to institute a civil action in a district court of the United States or other United States court for any district in which such person is found or resides or transacts business, to collect the penalty, and such court shall have jurisdiction to hear and decide any such action.  Any person who knowingly fails to obey a cease and desist order made by the Secretary under this section shall be subject to a civil penalty of $1,500 for each offense, and each day during which such failure continues shall be deemed a separate offense.

7 U.S.C. § 2149(b).

The Court's review of the AWA and the related regulations reveals that Congress did not specifically authorize inspectors to forcibly enter a licensee's premises in order to inspect for violations of the AWA.  Congress did provide a framework for inspections in 7 U.S.C. § 2146(a) as follows:

(a) Investigations and inspections

The Secretary shall make such investigations or inspections as he deems necessary to determine whether any dealer, exhibitor, intermediate handler, carrier, research facility, or operator of an auction sale subject to section 2142 of this title, has violated or is violating any provision of this chapter or any regulation or standard issued thereunder, and for such purposes, the Secretary shall, at all reasonable times, have access to the places of business and the facilities, animals, and those records required to be kept pursuant to section 2140 of this title of any such dealer, exhibitor, intermediate handler, carrier, research facility, or operator of an auction sale. The Secretary shall inspect each research facility at least once each year and, in the case of deficiencies or deviations from the standards promulgated under this chapter, shall conduct such follow-up inspections as may be necessary until all deficiencies or deviations from such standards are corrected. The Secretary shall promulgate such rules and regulations as he deems necessary to permit inspectors to confiscate or destroy in a humane manner any animal found to be suffering as a result of a failure to comply with any provision of this chapter or any regulation or standard issued thereunder if (1) such animal is held by a dealer, (2) such animal is held by an exhibitor, (3) such animal is held by a research facility and is no longer required by such research facility to carry out the research, test, or experiment for which such animal has been utilized, (4) such animal is held by an operator of an auction sale, or (5) such animal is held by an intermediate handler or a carrier.

7 U.S.C. § 2146(a).  As the Supreme Court explained in *Colonnade*, "where Congress has authorized inspection but made no rules governing the procedure that inspectors must follow, the Fourth Amendment and its various restrictive rules apply."  397 U.S. at 77. Notably, Congress did not specifically authorize the use of forcible entry in the statute authorizing USDA inspections of animals.  Accordingly, the Court concludes that under *Colonnade*, decided in 1970, "it would be clear to a reasonable officer [in each defendant's position] that" forcibly entering premises to conduct an inspection under the AWA in the absence of definite statutory authority or a warrant "was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 202.  As a result, the Court finds that as of May 7, 2013, the constitutional right that Plaintiffs assert was violated was clearly established.

### b.    Constitutional Violation

To determine whether the Inspector Defendants are entitled to qualified immunity, the Court must also determine whether the facts taken in the light most favorable to the Plaintiffs sufficiently allege a constitutional violation.  *Saucier*, 533 U.S. at 201.  The Fourth Amendment protects people from unreasonable searches of their "persons, houses, papers, and effects." U.S. Const. amend. IV.  To assert a violation of Fourth Amendment rights, the individual must demonstrate that he had an "expectation of privacy in the place searched, and that his expectation [wa]s reasonable."  *United States v. Gordon*, 168 F.3d 1222, 1225 (10th Cir.1999) (citing *Minnesota v. Carter*, 525 U.S. 83 (1998)). The Supreme Court has found that an expectation of privacy is reasonable if it is derived from a source "outside the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Id.* (citing *Rakas v. Illinois*, 439 U.S. 128, 143-44 (1978)). The burden is on the individual asserting

22

the right to show that he had a reasonable expectation of privacy. *United States v. Conway*, 73 F.3d 975, 979 (10th Cir.1995).

Plaintiffs allege that the Inspector Defendants arrived at Big Cats on May 7, 2013 at approximately 8:00 a.m. *Am. Compl.* [#15] ¶ 33. They maintain that the outer gate was locked and that near the gate were two signs indicating "NO TRESPASSING" AND "TRESPASSERS WILL BE PROSECUTED." *Id.* ¶ 34. Plaintiffs further allege that at approximately 8:45 a.m., Defendant Thompson called the El Paso County Sheriff's Office "and requested 'urgent' assistance" at the facility. *Id.* ¶ 36. Plaintiffs aver that when the two deputies arrived at the Big Cats facility, Defendants Thompson and Rhodes "falsely told the deputies: (a)[ ] that they (the inspectors) had obtained 'court orders' to seize two animals cubs at the facility . . . ; (b)[ ] that [Plaintiff] Sculac was 'refusing to allow them access to the facility;' (c)[ ] that their court order allowed them" to enter the property and seize the animals; (d) "that they were unsure to what lengths someone at the facility would go to keep the animals; and (e)[ ] that they (the inspectors) were concerned that someone could get hurt if one of the cats were let loose." *Id.* ¶ 37. Plaintiffs maintain that "there are no such court orders" and that "the inspectors lied to the police officers to induce them to cut the chains and enter the facility." *Id.* ¶ 38. As a result, Plaintiffs aver that "the deputies cut the chains on the external gate, and the inspectors and deputies entered the locked, private facility." *Id.* ¶ 39. Plaintiffs allege that the Inspector Defendants and the deputies parked their cars inside the facility and the "deputies cut the chains on [the] second gate" that had a "prominent sign" stating "DO NOT ENTER WITHOUT AN EMPLOYEE." *Id.* ¶¶ 39-40. According to Plaintiffs, the Inspector Defendants and deputies "walked through a significant portion of the facility before arriving where Maverick and Baxter were housed."

*Id.* ¶ 40.  Plaintiffs maintain that "[a] no time did any of the Plaintiffs give any of the Defendants permission to enter the property on May 7, 2013." *Id.* ¶ 45.

The Court finds that these allegations sufficiently allege a Fourth Amendment claim. As noted above, while licensees are subject to warrantless searches pursuant to the AWA, the specific conduct alleged by Plaintiffs, forcible entry, was not authorized by Congress. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." As *Colonnade* made clear, "closely regulated" industries may be inspected without a warrant when such inspections are authorized by Congress, but "where Congress has authorized inspection but made no rules governing the procedure that inspectors must follow, the Fourth Amendment and its various restrictive rules apply."  397 U.S. at 77.

Accordingly, to the extent the Motion seeks dismissal of Plaintiffs' Fourth Amendment claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court respectfully **recommends** that the Motion be **denied**.

## B.    Section 1983 Claim

Defendants argue that Plaintiffs' § 1983 claim fails as a matter of law because "§ 1983 does *not* apply to defendants acting under color of federal law." *Motion* [#23] at 24-25 (emphasis in original).  They further argue that the § 1983 claim should be stricken pursuant to Fed. R. Civ. P. 12(f) because it "is redundant and duplicative of the *Bivens* claim, which already 'lies against the federal official[s] in [their] individual capacity.'" *Id.* at 25 (quoting *Simmat*, 413 F.3d at 1231) (modifications in original).

Rule 12(f) permits the Court to "strike from a pleading an insufficient defense or any

redundant, immaterial, impertinent, or scandalous matter." "The rule's purpose is to conserve time and resources by avoiding litigation of issues which will not affect the outcome of a case." *Sierra Club v. Tri-State Generation & Transmission Ass'n*, 173 F.R.D. 275, 285 (D. Colo. 1997) (citing *United States v. Smuggler-Durant Mining Corp.*, 823 F.Supp. 873, 875 (D. Colo. 1993)); *see also RTC v. Schonacher*, 844 F.Supp. 689, 691 (D. Kan. 1994) (stating that Rule 12(f)'s purpose "is to minimize delay, prejudice, and confusion by narrowing the issues for discovery and trial"). However, motions to strike are disfavored and will only be granted under the rarest of circumstances. *Sierra Club*, 173 F.R.D. at 285. As such, the moving party's "burden of proof is a heavy one." *Holzberlein v. OM Fin. Life Ins. Co.*, No. 08-cv-02053-LTB, 2008 WL 5381503, at *1 (D. Colo. Dec. 22, 2008). Further, "[e]ven where the challenged allegations fall within the categories set forth in the rule, a party must usually make a showing of prejudice before the court will grant a motion to strike." *Sierra Club*, 173 F.R.D. at 285. Moreover, regardless of whether the moving party has met its burden to prove that allegations contained in a pleading violate Rule 12(f), discretion remains with the Court to grant or deny the motion. *See* Fed. R. Civ. P. 12(f) (denoting only that allegations which are subject to Rule 12(f) "may" be stricken). Here, Defendants do not offer any argument that the § 1983 claim should be stricken because they will be prejudiced. As a result, they have failed to meet their heavy burden of demonstrating that this claim should be stricken pursuant to Fed. R. Civ. P. 12(f).

Moreover, Defendants fail to acknowledge that Plaintiffs may seek "duplicative" relief under federal and state statutes and common addressing the allegedly illegal conduct. Pursuit of alternative claims for similar relief is expressly permitted in federal jurisprudence. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or

defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); *see, e.g., Boulware v. Baldwin*, 545 F.App'x 725, 729 (10th Cir. 2013) ("Federal pleading rules have for a long time permitted the pursuit of alternative and inconsistent claims." (citing cases)).  Therefore, to the extent the Motion argues that the § 1983 claim should be stricken pursuant to Fed. R. Civ. P. 12(f), the Court respectfully **recommends** that the Motion be **denied**.

With regard to Defendants' alternative argument that this claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because a § 1983 claim cannot be asserted against federal agents, Plaintiffs point to authority from other jurisdictions for the proposition that "when the Federal actors conscript local law enforcement, they can be found to be acting under color of state law." *Response* [#28] at 24.  In pertinent part, 42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  "[T]o act 'under color of' state law for § 1983 purposes does not require that the defendant be an officer of the State.  It is enough that he is a willful participant in joint action with the State or its agents.  Private persons, jointly engaged with state officials in the challenged action, are acting [ ] 'under color' of law for purposes of § 1983 actions." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980).  The question here is whether federal agents acting jointly with state agents are acting under color of state law for purposes of § 1983 actions.

Plaintiffs rely on *Reynoso v. City and County of San Francisco*, 2012 WL 646232 (N.D. Cal. Feb. 28, 2012), for the proposition that federal agents can be held liable under § 1983. *Response* [#28] at 25. In *Reynoso*, local police officers and agents of the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") entered the plaintiffs' residence and conducted a search. *Id.* at *1. The plaintiffs brought Fourth Amendment claims against the defendants who filed motions to dismiss those claims. *Id.* at *6. The California court found that, while "[f]ederal officials are generally not liable under § 1983 unless they are acting under color of state law, . . . [t]hey may, however, be liable under Section 1983 'if they are found to have conspired with or acted in concert with state officials to some substantial degree.'" *Id.* at *5 (quoting *Cabrera v. Martin*, 973 F.2d 735, 742 (9th Cir. 1992)). The court found that the plaintiffs "sufficiently alleged a 'symbiotic relationship' between the federal defendants and the state to claim liability under § 1983" because "[t]he SFPD conducted the initial entry into plaintiffs' residence. After the premises was secured, the ATF agents merely substituted themselves for the agents of the City and County of San Francisco in the break-in of plaintiffs' home and took up the search and seizure initiated by the City and County of San Francisco authorities." *Id.* at *6 (internal quotation marks and citations omitted).

The parties point to no binding Tenth Circuit authority that establishes a test, like the "symbiotic relationship" test, that would be applicable to this case. The only parallel the Court has found is the standard applied by the Tenth Circuit when determining whether a *private party* is acting under color of state law and, therefore, may be subject to liability under § 1983. *See, e.g., Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447-

57 (10th Cir. 1995) (discussing four tests: the nexus test, the symbiotic relationship test[7],

the joint action test, and the public function test).  Of the four tests used by the Tenth Circuit

to determine whether a private party is acting under color of state law, the one that most

closely fits the situation at hand is the joint action test, which asks the Court to "examine

whether state officials and private parties have acted in concert in effecting a particular

deprivation of constitutional rights."  *Id.* at 1453 (citing *Collins v. Womancare*, 878 F.2d

1145, 1154 (9th Cir.1989), *cert. denied*, 493 U.S. 1056 (1990) and *Sims v. Jefferson Downs*

*Racing Ass'n*, 778 F.2d 1068, 1076-80 (5th Cir.1985)).  The Tenth Circuit has determined

that "[u]nder this approach, state and private entities must share a specific goal to violate

the plaintiff's constitutional rights by engaging in a particular course of action."  *Id.* at 1455.

That requirement is problematic in the case at hand because Plaintiffs allege that the

Inspector Defendants lied to the deputies and that the deputies cut the locks on the gates,

allowing the federal agents entry into Big Cats, based on the Inspector Defendants'

representation that they had court orders.

> Specifically, Plaintiffs allege that the Inspector Defendants are liable
>
> under Section 1983 because they acted under color of state law when they
> induced the deputies to cut the chains and enter the premises by making
> false statements including (1) they had court orders that allowed them to
> seize the animals and to enter the premises, and (2) they feared that the
> animals may be let loose and cause harm to others.

*Am. Compl.* [#15] ¶ 52.  Plaintiffs further allege that "[r]elying upon the USDA's

representations, the deputies cut the chains on the external gate, and the inspectors and

---

[7]  While it shares a name with the test discussed in *Reynoso*, this test is applicable to situations when "the state has so far insinuated itself into a position of interdependence with a private party that it must be recognized as a joint participant in the challenged activity." *Gallagher*, 49 F.3d at 1451 (internal quotation marks and citations omitted).

deputies entered the locked, private facility." *Id.* ¶ 39.  In addition, Plaintiffs maintain that

> Mr. Sculac, through his attorneys, has more than once requested copies of these alleged "court orders."  The USDA has refused to even affirm that they exist.  Upon information and belief, there are no such court orders; instead, the inspectors lied to the police officers to induce them to cut the chains and enter the facility.

*Id.* ¶ 38.  Therefore, there are two major problems with attempting to shoe-horn the facts of this case into the analysis under the joint action test applicable to private persons.  First, there could be no "shared specific goal" because, according to the allegations in the Amended Complaint, the deputies were acting on misinformation.  Second, the Inspector Defendants approached the deputies not as regular private citizens, but with the authority invested in them as federal agents who stated that they had court orders that allowed them entrance.

Because of these significant problems with application of the test applied by the Tenth Circuit to determine whether private persons are acting under color of state law, the Court finds the logic of *Reynoso* persuasive.  In that case, federal agents and local law enforcement officers both entered a home after the local law enforcement officers forcibly entered the premises.  2012 WL 646232, at *1.  In that case, as here, the local law enforcement officers were used to breach the barrier to entrance of the private home or facility.  That breach is at the heart of Plaintiffs' Fourth Amendment claim and there is no reason to believe that the Inspector Defendants could have breached the Big Cats facility without the deputies' assistance.  Therefore, based on the facts of this case, the Court concludes that because Plaintiffs have alleged that the breach of the Big Cats facility that forms the basis of Plaintiffs' Fourth Amendment claim was undertaken by local law enforcement officers at the request of the Inspector Defendants, they have sufficiently

alleged that the Inspector Defendants were acting under color of state law.  *See Reynoso*, 2012 WL 646232, *5-*6.

Therefore, to the extent the Motion argues that the § 1983 claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because a § 1983 claim cannot be asserted against federal agents, the Court respectfully **recommends** that the Motion be **denied**.

## C.    Declaratory Judgment Claims

Finally, Defendants argue that Plaintiffs' third and fourth claims, which seek declaratory relief, should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction.  *Motion* [#23] at 21-24.  Specifically, Defendants argue that "[b]ecause [P]laintiffs seek in claims three and four an interpretation of AWA regulations that would require their amendment, they must follow the APA and present these issues in a petition for rulemaking to amend the AWA rules."  *Id.* at 23 (citing 5 U.S.C. § 553(e)).  Defendants rely on The Department of Agriculture Reorganization Act of 1994, 7 U.S.C. § 6901, *et seq.*, to argue that Plaintiffs must exhaust all administrative remedies before filing suit against the Secretary of the USDA.[8]  Plaintiffs argue that they do not seek amendment of AWA regulations, but rather they "seek declarations that Defendants violated the AWA

---

[8]  7 U.S.C. § 6912(e) states:

Exhaustion of administrative appeals

Notwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against--

(1) the Secretary;

(2) the Department; or

(3) an agency, office, officer, or employee of the Department.

regulations *as written*, and that, in the future, the USDA must follow its regulations *as written*." *Response* [#28] at 20 (emphasis in original).

Defendants again appear to misunderstand Plaintiffs' claims.  In their third claim, Plaintiffs seek a declaratory judgment "declaring that [Defendant] Thompson inappropriately overrode the medical advice of [Plaintiff] Big Cats' veterinarians and declaring that, in the future, the USDA cannot force [Plaintiff] Sculac to choose between following the medical advice of his veterinarians and the mandates of a USDA inspector." *Am. Compl.* [#15] ¶¶ 55-60.[9]  In their fourth claim, Plaintiffs "seek a declaratory judgment that the USDA must follow its own regulations and that it cannot conduct a warrantless search of the Big Cats facility outside of 'normal business hours' solely because an inspector 'want[s] to' or because an inspector subjectively 'believe[s] [it] necessary to determine the welfare status of the animals . . . .'" *Id.* ¶¶ 61-72.[10]  On their face, these claims do not seek *amendment* of AWA regulations, rather they ask the Court to address the *application* of AWA regulations to Plaintiff Big Cats in the future.  Therefore, Defendants' reliance on 5 U.S.C.

---

[9]  Plaintiffs base this claim on 9 C.F.R. § 2.40(b)(2), which states: "Each dealer or exhibitor shall establish and maintain programs of adequate veterinary care that include [ ] [t]he use of appropriate methods to prevent, control, diagnose, and treat diseases and injuries, and the availability of emergency, weekend, and holiday care . . . ."

[10]  Plaintiffs base this claim on 9 C.F.R. § 2.126(a), which, among other things, requires licensees to allow APHIS officials to enter the place of business "during business hours."  Pursuant to 9 C.F.R. § 1.1, "business hours" is defined as "a reasonable number of hours between 7 a.m. and 7 p.m., Monday through Friday, except for legal Federal holidays, each week of the year, during which inspections by APHIS may be made."

§ 553(e)[11] and  7 C.F.R. § 1.28[12] are misplaced because each of these provisions govern requests to amend or repeal existing rules.  Defendants do not cite to any applicable statute or regulation that offers a means for Plaintiffs to appeal Defendants' application of existing rules.

Courts have been asked to consider whether plaintiffs who challenge the application of a federal statute or regulation by a federal employee or official are required to exhaust administrative remedies.  A review of such cases reveals that the conclusion reached by other courts that have faced this issue is logical—if the challenged statute provides a method for challenging the application, the plaintiffs must follow it before filing suit. However, in cases in which the statute does not provide such a remedy, the plaintiffs may file suit without filing an administrative action or appeal.  *See, e.g., Munsell v. Dep't of Agriculture*, 509 F.3d 572, 591-592 (D.C. Cir. 2007) (dismissing *Bivens* action because 9 C.F.R. § 306.5[13] "establishes an extremely straightforward process for appealing the decisions of FSIS officials . . . ."); *Skubel v. Fuoroli*, 113 F.3d 330, 334 (2d Cir. 1997) ("Where a plaintiff is challenging the *validity* of a regulation, the rule of exhaustion normally requires that the plaintiff petition for rulemaking.") (emphasis added); *Templeton's Serv., Inc. v. Mobil Oil Corp.*, 402 F. Supp. 368, 374 (E.D. Mich. 1975) (rejecting motion to dismiss

---

[11]  "Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule."

[12]  "Petitions by interested persons in accordance with 5 U.S.C. 553(e) for the issuance, amendment or repeal of a rule may be filed with the official that issued or is authorized to issue the rule.  All such petitions will be given prompt consideration and petitioners will be notified promptly of the disposition made of their petitions."

[13] This regulation governs inspections of meat and poultry products by individuals employed by the Food Safety and Inspection Service ("FSIS"), an agency of the USDA.

for failure to exhaust administrative remedies because "Plaintiffs here seek only an application of [Federal Energy Administration]'s price regulations to the facts of this suit and do not in any way challenge the regulations themselves.").  This is sensible because where no administrative remedy exists, potential plaintiffs are left with no recourse other than filing suit.

As the *Templeton's* court explained:

The doctrine of exhaustion of administrative remedies provides generally "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."  The doctrine applies most commonly where the relevant statute provides for the exclusivity of administrative procedures in order to avoid premature interruption of the administrative process and to permit an agency to apply a statute in the first instance.  Likewise, where Congress has committed certain functions or matters which require application of special expertise to the discretion of an agency, courts ordinarily defer to the agency at the outset.  The doctrine, however, is not without exceptions, and its application hinges upon the particulars of a given case.  Accordingly, the court must examine the statute here involved, its legislative history, the adequacy of the administrative remedies provided, and other relevant authorities under the circumstances of this case.

*Templeton's Serv., Inc.*, 402 F.Supp. at 370 (internal citations omitted).  Here, the only regulation or statute identified by the parties that discusses the type of relief Plaintiffs seek is 7 U.S.C. § 2146(c), a provision of the AWA stating:

The United States district courts, the District Court of Guam, the District Court of the Virgin Islands, the highest court of American Samoa, and the United States courts of the other territories, are vested with jurisdiction specifically to enforce, and to prevent and restrain violations of this chapter, and shall have jurisdiction in all other kinds of cases arising under this chapter, except as provided in section 2149(c)[14] of this title.

7 U.S.C. § 2146(c).  Accordingly, the Court concludes that Plaintiffs were not required to

---

[14]  This section governs "violations by licensees" and provides for license suspension and criminal penalties.

exhaust administrative remedies and that, pursuant to 7 U.S.C. § 2146(c), this Court has jurisdiction over Plaintiffs' third and fourth claims.

Therefore, to the extent the Motion argues that the declaratory judgment claims should be dismissed for lack of jurisdiction, the Court respectfully **recommends** that the Motion be **denied**.

In the alternative, Defendants argue that Plaintiffs "lack standing to pursue these claims because they haven't suffered an injury in fact that is concrete, imminent, or redressable." *Motion* [#23] at 23 (citing *Lujan*, 504 U.S. at 560). Plaintiffs argue that they do have standing because the issues they are asking the Court to resolve, "if granted, will result in the 'settling of some dispute which affects the behavior of *the defendant[s] toward the plaintiff[s].*'" *Response* [#28] at 22 (quoting *Jordan v. Sosa*, 654 F.3d 1012, 1019 (10th Cir. 2011)) (emphasis in *Jordan* and modifications in original).

As noted above, Plaintiffs are asking the Court to enter a declaratory judgment "declaring that [Defendant] Thompson inappropriately overrode the medical advice of [Plaintiff] Big Cats' veterinarians and declaring that, in the future, the USDA cannot force [Plaintiff] Sculac to choose between following the medical advice of his veterinarians and the mandates of a USDA inspector," *Am. Compl.* [#15] ¶¶ 55-60, and declaring "that the USDA must follow its own regulations and that it cannot conduct a warrantless search of the Big Cats facility outside of 'normal business hours' solely because an inspector 'want[s] to' or because an inspector subjectively 'believe[s] [it] necessary to determine the welfare status of the animals . . . .'" *Id.* ¶¶ 61-72. Plaintiffs allege that Plaintiff Big Cats "is licensed by the USDA" and that "inspectors routinely conduct unannounced inspections of licensed

facilities (including Big Cats) to ensure compliance with the AWA" *Id.* ¶¶ 14-15.  In addition,

7 U.S.C. § 2146(a) mandates that each licensed facility be inspected at least once each

year:

> The Secretary [of Agriculture] shall inspect each research facility at least once
> each year and, in the case of deficiencies or deviations from the standards
> promulgated under this chapter, shall conduct such follow-up inspections as
> may be necessary until all deficiencies or deviations from such standards are
> corrected.

7 U.S.C. § 2146(a).  Further, 9 C.F.R. § 2.126 requires AWA licensees to allow APHIS

officials to inspect their premises during business hours.  Taken together, these alleged

facts and the regulation make it clear that as long as the licensed Plaintiff[15] (the "Licensed

Plaintiff") continues to be licensed, it will be subject to inspection at least once each year.

As the Tenth Circuit made clear in *Jordan*, "[a]lthough a plaintiff may present

evidence of a past injury to establish standing for retrospective relief, he must demonstrate

a continuing injury to establish standing for prospective relief."  654 F.3d at 1019 (citing

*PETA v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir.2002)).  In this case, Plaintiffs'

allegations make clear that Plaintiff Big Cats may continue to be subject to the alleged past

injury and, therefore, it has standing to pursue the declaratory judgment claims.  *Cf.*

*Salvation Army v. Dep't of Cmty. Affairs*, 919 F.2d 183, 192 (3d Cir.1990) ("[T]he plaintiff

must demonstrate that the probability of that future event occurring is real and substantial,

---

[15] Plaintiffs allege only that Plaintiff Big Cats is a licensee. *Am. Compl.* [#15] ¶ 14.  During
the October 8, 2014 oral argument, Plaintiffs' counsel stated that "Jules Investments may not be
the right plaintiff" but noted that Plaintiffs Nick Sculac and Big Cats are "undoubtably licensed [sic]
holders who are being inspected regularly . . . ." *Trans.* [#39] 56:24-57:5.  However, because the
Court is considering a motion to dismiss, it must only consider the allegations in the Amended
Complaint as true and cannot take counsel's statement at the oral argument as fact.  Accordingly,
because the Amended Complaint does not allege that any other Plaintiff is a licensee, the Court
assumes for purposes of this Recommendation only that the only licensed Plaintiff is Big Cats.

'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" (quoting *Steffel v. Thompson*, 415 U.S. 452, 460 (1974))). However, because there is no allegation that the other Plaintiffs are licensed, there is no basis to believe that they may be subject to continuing injury sufficient to establish standing for prospective relief. *See Jordan*, 654 F.3d at 1019.

Therefore, to the extent the Motion argues that the declaratory judgment claims should be dismissed because Plaintiffs lack standing, the Court respectfully **recommends** that the Motion be **granted in part** and **denied in part** and that the declaratory judgment claims asserted by Plaintiffs Nick Sculac, Julie Walker, and Jules Investment, Inc. be **dismissed**.

## IV. Conclusion

Accordingly, for the reasons stated above, the Court respectfully **RECOMMENDS** that the Motion [#23] be **GRANTED in part** and **DENIED in part**.

The Court FURTHER **RECOMMENDS** that, to the extent the Motion argues that the declaratory judgment claims should be dismissed because Plaintiffs lack standing, the Motion be **GRANTED in part** and **DENIED in part** and that the declaratory judgment claims asserted by Plaintiffs Nick Sculac, Julie Walker, and Jules Investment, Inc. be **DISMISSED without prejudice**.[16]   In all other aspects, the Court respectfully **RECOMMENDS** that the Motion be **DENIED**.

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen

---

[16] *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding that prejudice should not attach to a dismissal when a plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

(14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  January 5, 2015

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

37